# EXHIBIT 1





**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Sep-26-2018 10:10 am

Case Number: CGC-18-570125

Filing Date: Sep-26-2018 10:07

Filed by: BOWMAN LIU

Image: 06510833

COMPLAINT

ANTONIO TECSON VS. LYFT, INC. ET AL

001C06510833

**Instructions:**

Please place this sheet on top of the document to be scanned.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

LYFT, INC., a Delaware corporation; and DOES 1 through 10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ANTONIO TECSON, individually and on behalf of all others similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  San Francisco Superior Court<br>Civic Center Courthouse, 400 McAllister Street, San Francisco, California 94102 | CASE NUMBER:<br>*(Número del Caso):*<br>**CGC-18-570125** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael J Jaurigue, Jaurigue Law Group, 300 W Glenoaks Blvd #300, Glendale, CA 91202, tel. 818.630.7280

DEPUTY CLERK

| DATE:  SEP 2 6 2018 | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)*  Bowman Liu | *(Adjunto)* |

BOWMAN LIU

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

BY FAX
ONE LEGAL LLC

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
     ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
     ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
     ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

1   Michael J. Jaurigue (SBN 208123)
      michael@jlglawyers.com
2   Abigail A. Zelenski (SBN 228610)
      abigail@jlglawyers.com
3   David Zelenski (SBN 231768)
      david@jlglawyers.com
4   Ryan A. Stubbe (SBN 289074)
      ryan@jlglawyers.com
5   JAURIGUE LAW GROUP
    300 West Glenoaks Boulevard, Suite 300
6   Glendale, California 91202
    Telephone: 818.630.7280
7   Facsimile: 888.879.1697

8   *Attorneys for Plaintiff Antonio Tecson*

9            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                    **COUNTY OF SAN FRANCISCO**

11

12  ANTONIO TECSON, individually and on behalf      Case No.  **CGC-18-570125**
    of all others similarly situated,
13                                                   **CLASS-ACTION COMPLAINT**
                Plaintiff,
14                                                   Violation of the Telephone Consumer Protection
         v.                                          Act, 47 U.S.C. § 227
15
    LYFT, INC., a Delaware corporation; and DOES
16  1 through 10, inclusive,                         **DEMAND FOR JURY TRIAL**

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

FILED
Superior Court of California
County of San Francisco

SEP 2 6 2018

CLERK OF THE COURT
BY: _____ Deputy Clerk
BOWMAN LIU

BY FAX

***INTRODUCTION***

1.     Plaintiff Antonio Tecson brings this class action on behalf of himself and all others similarly situated against Defendants Lyft, Inc. ("Lyft") and Does 1 through 10, inclusive, pursuant to section 382 of the California Code of Civil Procedure.[1]

2.     As alleged below, Defendants have violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, through their unauthorized contact of consumers on the consumers' respective cellular telephones.  Specifically, Defendants have violated the TCPA by sending unsolicited text messages without prior express consent, invading the consumers' right to privacy.

3.     Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and Class Members are entitled to, *inter alia*, statutory damages and injunctive relief for Defendants' violations.

***JURISDICTION AND VENUE***

4.     ***Jurisdiction***.  Federal and state courts have concurrent jurisdiction over suits arising under the TCPA.  See Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012).  This Court therefore has subject-matter jurisdiction over Plaintiff's cause of action.  Furthermore, this Court has personal jurisdiction over Defendants because, as alleged below, they have purposefully availed themselves of the resources and protections of California, and they conduct business and have systematic contacts within the County of San Francisco, State of California.

5.     ***Venue***.  As alleged more particularly below, venue is proper in the County of San Francisco because Lyft's principal place of business is within the County of San Francisco.

***PARTIES***

6.     Plaintiff is, and at all times relevant to this action was, a California resident of the County of Los Angeles.  He is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C. § 153.

7.     Plaintiff is informed and believes, and based thereon alleges, that Lyft is a Delaware corporation with a principal place of business located in San Francisco County at 185 Berry Street, Suite 5000, San Francisco, California 94107.  Plaintiff is further informed and believes, and based thereon

---

[1] Collectively, Lyft and Does 1 through 10 are referred to herein as "Defendants."

1  alleges, that Lyft is, and at all times relevant to this action was, a "person" as defined under 47 U.S.C.

2  § 153.

3       8.     Plaintiff is ignorant of the true names and capacities of Defendants Does 1 through 10,

4  and he therefore sues them under those fictitious names pursuant to section 474 of the Code of Civil

5  Procedure.  Plaintiff is informed and believes, and based thereon alleges, that each of the acts and

6  omissions alleged herein was performed by, or is attributable to, Lyft and Does 1 through 10, with each

7  acting as the agent for the others, with each having the legal authority to act on the others' behalves, and

8  with each ratifying every act or omission complained of herein.  Plaintiff is further informed and

9  believes, and based thereon alleges, that each Defendant is in some manner intentionally, negligently, or

10  otherwise responsible for the acts and omissions of the other Defendants in proximately causing the

11  damages alleged.  Similarly, Plaintiff is informed and believes, and based thereon alleges, that the acts

12  and omissions of each Defendant were in accordance with, and represent, the official policy and practice

13  of all Defendants.  Plaintiff will amend the Complaint to allege the true names and capacities of Does 1

14  through 10 when such names and capacities have been ascertained.

15                     ***GENERAL ALLEGATIONS***

16       9.     Lyft is an on-demand transportation company that develops, markets, and operates the

17  Lyft mobile application, or "app."  The app is used to connect consumers in search of transportation

18  services (*e.g.*, ride-sharing services).  In order to use Lyft for ride-sharing purposes, a consumer must

19  download the app to his or her mobile device.  After downloading the app, the consumer can request a

20  ride from a Lyft driver through the app.

21       10.     Plaintiff is informed and believes, and based thereon alleges, that Defendants actively

22  attempt to recruit people to become Lyft drivers.  To that end, in early 2018, Plaintiff received two text

23  messages on his cellular telephone (telephone number (818) 635 – ----), one of which stated that "Lyft is

24  looking for 3 more drivers in your area! $37/hour, $250 bonus. Visit: http://wk4u.co/EumTos (Reply

25  STOP to cancel," and the other of which similarly stated that "Lyft is looking for 3 more drivers in your

26  area! $37/hour, $250 bonus. Visit: http://wk4u.co/onfspv (Reply STOP to cancel)."  Also in early 2018,

27  Plaintiff received a third similar text message that referred to a $300 bonus and that directed him to the

28  following link: http://wk4u.co/FXTFVI.

11.     As is apparent from the content of the text messages referenced in paragraph 10, they were sent without an emergency purpose.  Instead, the text messages were sent specifically to recruit drivers for Lyft.  For example, visiting the link "http://wk4u.co/onfspv" through an internet browser redirects the browser to the following website, which appears to be a driver-recruitment webpage for Lyft: https://www.lyft.com/drive-with-lyft?v=city-lax-2&utm_medium=jb&utm_source=birddog& adgroup=LAX&utm_content=15138657866&utm_campaign=PAID_DAX_JB_US_LAX_WEB_ALL& adname=NA_NA_ld-eec_NA_SO-250-100-30&cvosrc=jobboard.birddog.PAID_DAX_JB_US_LAX_ WEB_ALL&cvo_campaign=PAID_DAX_JB_US_LAX_WEB_ALL&ref=JBB25010030&placement =FI_Email_YDL2ND&utm_term= (last visited September 19, 2018).  A copy of that webpage is attached hereto as **Exhibit 1**.  Visiting the links "http://wk4u.co/EumTos" and "http://wk4u.co/ FXTFVI" leads to what appear to be identical webpages—copies of which are attached hereto as **Exhibits 2** and **3**, respectively—although the web addresses for the pages are slightly different. (Compare Ex. 2 with Ex. 3.[2])

12.     Plaintiff is informed and believes, and based thereon alleges, that the text messages referenced in paragraph 10 were sent by Defendants, and that Defendants controlled and were responsible for both the content and delivery of the messages; alternatively, the messages were sent by at least one of the Defendants acting at the direction of the other Defendants to send the messages or to conduct recruitment activities for Lyft, with the other Defendants' full knowledge and consent, and to the benefit of all Defendants.  Plaintiff had never given any authorization to anyone expressly permitting

---

[2] The webpage addresses appear at the bottom of Exhibits 1 through 3—although the addresses are difficult to read because of their font-size.  Plaintiff reproduces the addresses here:

**Exhibit 2** (http://wk4u.co/EumTos): https://www.lyft.com/drive-with-lyft?v=city-lax-2&utm_ medium=jb&utm_source=birddog&adgroup=LAX&utm_content=15138566064&utm_campaign =PAID_DAX_JB_US_LAX_WEB_ALL&adname=NA_NA_ld-eec_NA_SO-250-100-30& cvosrc=jobboard.birddog.PAID_DAX_JB_US_LAX_WEB_ALL&cvo_campaign=PAID_DAX _JB_US_LAX_WEB_ALL&ref=JBB25010030&placement=FI_Email_YDL3&utm_term= (last visited September 19, 2018)

**Exhibit 3** (http://wk4u.co/FXTFVI): https://www.lyft.com/drive-with-lyft?v=city-lax-2&utm_ medium=jb&utm_source=birddog&adgroup=LAX&utm_content=15138677328&utm_campaign =PAID_DAX_JB_US_LAX_WEB_ALL&adname=NA_NA_ld-eec_NA_SO-250-100-30& cvosrc=jobboard.birddog.PAID_DAX_JB_US_LAX_WEB_ALL&cvo_campaign=PAID_DAX _JB_US_LAX_WEB_ALL&ref=JBB25010030&placement=FI_Email_YDL&utm_term= (last visited September 19, 2018)

(Exs. 2–3.)

1    Defendants, or anyone acting on any of their respective behalves, to use his cellular-telephone number

2    for job-recruitment purposes.

3        13.    The (818) area-code prefix for Plaintiff's cellular-telephone number is linked to a

4    subscription plan under which he is charged each month for cellular-telephone and data services.

5        14.    Plaintiff is informed and believes, and based thereon alleges, that his cellular-telephone

6    number—along with thousands of other cellular-telephone numbers—was entered into, and stored in, a

7    database maintained by Defendants, and that Defendants sent him the above-alleged text messages by

8    accessing that database through the use of automated equipment capable of dialing the numbers that had

9    been entered into, and stored in, that database.  Plaintiff is further informed and believes, and based

10   thereon alleges, that that the dialing equipment was capable, at the time that the messages were sent to

11   him, to randomly or sequentially dial the numbers stored in the database

12       15.    Plaintiff is informed and believes, and based thereon alleges, that Defendants, working

13   together pursuant to the arrangement alleged in paragraph 12, sent the above-referenced text messages,

14   as well as thousands of similar text messages, *en masse* to the cellular telephones of members of the

15   general public using the equipment referenced in paragraph 14.  Plaintiff is further informed and

16   believes, and based thereon alleges, that all of these text messages were sent regardless of whether

17   Defendants had ever obtained authorizations from anyone permitting the transmission of job-recruitment

18   messages.

19                            ***CLASS-ACTION ALLEGATIONS***

20       16.    Plaintiff seeks to represent the following Class under section 382 of the Code of Civil

21   Procedure:  All persons who, since the four years prior to the filing of the Complaint in this action,

22   received a job-recruitment text message from, or on behalf of, Defendants without first providing their

23   respective telephone numbers to Defendants.  Plaintiff reserves the right to amend or modify the Class,

24   or to propose subclasses or limitations to particular issues, in response to facts later ascertained.

25       17.    ***Numerosity***.  The identities of Class Members may be ascertained from Defendants' own

26   business and marketing records, as well as the records of Defendants' telephone provider(s).  Joinder of

27   all Class Members would be impracticable due to the sizeable number of such Members and their likely

28   lack of resources to initiate individual claims.  Plaintiff estimates that thousands of text messages were

sent to well-over the forty individuals required for numerosity purposes. Also, as explained below, the amount that is owed to any given Class Member under the TCPA is relatively small, making it impractical for them to bring their own individual suits.

18.  **Commonality**.  There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual Class Members.  These common questions include, without limitation:

a)  Whether the equipment used to send the text messages constitutes an automatic telephone dialing system within the meaning of the TCPA and its regulations; and

b)  Whether the provision of a telephone number to Defendants in connection with, for example, the use of the Lyft app for the purpose of requesting a ride as a Lyft customer constituted consent to receive job-recruitment text messages.

19.  **Typicality**.  Plaintiff's claims are typical of those of the Class because he received job-recruitment text messages from, or on behalf of, Defendants; he never provided his telephone number to Defendants for job-recruitment purposes; and the messages that he received were sent to him using the same equipment used to send messages to all Class Members on their cellular telephones.

20.  **Adequacy**.  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff is not aware of any conflicts with Class Members, and he plans on pursuing the litigation vigorously.  He also has the same interests as those of the Class, and has retained counsel who are competent and experienced in class-action litigation.  In addition, Plaintiff has been actively involved in the litigation, he will continue to participate and be available for the duration of the litigation, and he understand the duties that he holds to the Class.

21.  **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Again, the individual joinder of all Class Members is impracticable because of the relatively small recovery amounts at stake and the relative lack of resources available for individual Class Members vis-à-vis the large corporate Defendants.  Additionally, the judicial system would be burdened with multiple trials of the same issues, and the potential for inconsistent or contradictory judgments would increase.  The common questions detailed above, in fact, predominate in this action, as Class Members' claims arise out of the same course of conduct to which

1   Plaintiff himself was subject. A class action therefore would conserve the resources of the parties and

2   the Court while protecting the rights of Class Members. Defendants' conduct as described above is

3   unlawful, continuing, capable of repetition, and will continue unless restrained and enjoined by the

4   Court. Moreover, it is a matter of public interest to obtain definitive answers to the legality of

5   Defendants' actions in a single case.

6   ***FIRST CAUSE OF ACTION***

7   *Violation of the TCPA*

8   *47 U.S.C. § 227*

9   22.     Plaintiff re-pleads, re-alleges, and incorporates by reference each and every allegation set

10   forth in this Complaint.

11   23.     The United States Congress enacted the TCPA in order to balance individual privacy

12   rights with legitimate telemarketing practices. In enacting this statute, Congress found:

13   (1) The use of the telephone to market goods and services to the home and other
     businesses is now pervasive due to the increased use of cost-effective telemarketing
14   techniques.

15   . . . .

16   (10) Evidence compiled by the Congress indicates that residential telephone
17   subscribers consider automated or prerecorded telephone calls, regardless of the content
     or the initiator of the message, to be a nuisance and an invasion of privacy.
18
     (11) Technologies that might allow consumers to avoid receiving such calls are
19   not universally available, are costly, are unlikely to be enforced, or place an inordinate
     burden on the consumer.
20
     (12) Banning such automated or prerecorded telephone calls to the home, except
21   when the receiving party consents to receiving the call or when such calls are necessary
     in an emergency situation affecting the health and safety of the consumer, is the only
22   effective means of protecting telephone consumers from this nuisance and privacy
     invasion.
23

24   TCPA of 1991, Pub. L. No. 102–243, 105 Stat. 2394 (1991).

25   24.     The TCPA specifically prohibits automated calls or messages to consumers' cellular-

26   telephone numbers without first obtaining the express consent or permission of the consumers:

27   It shall be unlawful for any person within the United States, or any person outside
     the United States if the recipient is within the United States[,] (A) to make any call (other
28   than a call made for emergency purposes or made with the prior express consent of the

6

1    called party) using any automatic telephone dialing system . . . (iii) to any telephone
     number assigned to a . . . cellular telephone service . . . .

2    47 U.S.C. § 227(b)(1). A text message is a "call" within the meaning of the TCPA. E.g., Satterfield v.

3    Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009).

4         25.    Although it is true that, under the TCPA, "persons who knowingly release their phone

5    numbers have in effect given their invitation or permission to be called at the number which they have

6    given, absent instructions to the contrary," Report and Order, In the Matter of Rules and Regulations

7    Implementing the TCPA of 1991, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992) (internal reference omitted),

8    the "[t]he Ninth Circuit recently interpreted this language 'in a way that harmonizes with the TCPA's

9    text and purpose, as well as the FCC's other orders and rulings.'" Walintukan v. SBE Entm't Grp.,

10   LLC, No. 16-cv-01311-JST, 2018 WL 2357763, at *2 (N.D. Cal. May 24, 2018) (quoting Van Patten v.

11   Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044 (9th Cir. 2017)). To this end:

12          "[A]n effective consent is one that relates to the same subject matter as is covered by the
     challenged calls or text messages." Van Patten, 847 F.3d at 1044-45. The [Ninth

13          Circuit] did "not read the 1992 Order to mean that the FCC has determined that providing
     a phone number in itself means that the consumer has expressly consented to contact for

14          any purpose whatsoever. Instead, the consent must be considered to relate to the type of
     transaction that evoked it." Id. at 1045. Thus, "the scope of a consumer's consent

15          depends on the transactional context in which it is given. The call or text message must
     be based on the circumstance in which the consumer gave his or her number." Id. at

16          1040. "[T]he FCC has established no rule that a consumer who gives a phone number to
     a company has consented to be contacted for any reason." Id. at 1046.

17

18   Walintukan, 2018 WL 2357763, at *2. Here, no Class Members consented to receive job-recruitment

19   text messages from, or on behalf of, Defendants; even if Class Members had provided their respective

20   telephone numbers to Lyft in connection with using the Lyft app to request a ride from Lyft, such a

21   provision only would have been consent to be contacted about using Lyft as ride-sharing customers, not

22   consent to be contacted about job-recruitment possibilities.

23        26.    The foregoing acts and omissions of Defendants constitute a direct violation of the

24   TCPA. Defendants were and are aware of the TCPA and its requirements, and, on information and

25   belief, intentionally violated the law in an effort to maximize the reach of their job-recruitment program.

26   Defendants' violations therefore were willful.

27        27.    The TCPA establishes a private right of action for sending unauthorized messages to

28   consumers:

1         A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

6   47 U.S.C. § 227(b)(3). Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff and Class Members are entitled

7   to an award of $500 in statutory damages for each and every text message that they received. Moreover,

8   because Defendants willfully and knowingly violated the TCPA as alleged above, Plaintiff and Class

9   Members are entitled to treble damages. Finally, pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff and

10   Class Members are entitled to injunctive relief.

11                                 ***PRAYER FOR RELIEF***

12         **WHEREFORE**, Plaintiff prays for judgment as follows:

13         1.     An order certifying the Class under California Code of Civil Procedure section 382;

14         2.     Judgment in favor of Plaintiff and Class Members for the period of time since four years

15   prior to the filing of the Complaint, for statutory treble damages against Defendants, as well as for

16   injunctive relief;

17         3.     An award of pre-judgment and post-judgment interest, to the extent allowable by law;

18         4.     An award of attorney's fees and costs of suit, to the extent allowable by law; and

19         5.     Such further relief as the Court deems fit and proper.

20

21   Dated: September 25, 2018                     JAURIGUE LAW GROUP

22

23                                       Michael J. Jaurigue

24                                       Abigail A. Zelenski
David Zelenski
Ryan A. Stubbe
*Attorneys for Plaintiff*

25

26   / / / / /

27

28

1

*DEMAND FOR JURY TRIAL*

2        Plaintiffs request a trial by jury as to all causes of action.

3

4    Dated:  September 25, 2018                    JAURIGUE LAW GROUP

5

6                                                 Michael J. Jaurigue
                                                  Abigail A. Zelenski
7                                                 David Zelenski
                                                  Ryan A. Stubbe
8                                                 *Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# *EXHIBIT 1*



# Hello, LA. Drive More. Earn More.

Sign up to drive

Let's start with your phone number - we'll text you

○ I have a car    ● I need a car

Next

Already sign up?
Check the status of your application here

Get a $250 bonus

## What is Lyft?

Lyft matches drivers with passengers who request rides through our smartphone app, and passengers pay automatically through the app.

Whether you're trying to offset costs of your car, cover this month's bills, or fund your dreams, Lyft will get you there. So, go ahead. Be your own boss.

## Why Lyft?

**Keep Your Tips**

Earn tips from your passengers and keep the whole amount — they're yours.

**Make More Money**

With increased Prime Time pricing during peak hours, you make more with Lyft.

**Best Community**

The Lyft community is full of awesome, friendly people — passengers and drivers alike.



## How Lyft Driving Works

STEP 1

Open the app and turn on driver mode.

## Lyft Insurance Protection

Lyft provides additional insurance policies, at no cost to the driver. We worked with leading insurance carriers to provide various coverages including: commercial auto liability insurance up to $1M per occurrence, contingent comprehensive and collision insurance for drivers who carry comprehensive and collision coverage on their personal auto policy, and coverage for bodily injury caused by uninsured/underinsured motorists when you are engaged in a ride. If you already carry commercial insurance or personal coverage providing specific coverage for ridesharing, Lyft's policy will continue to be excess to your insurance coverage. Please note, the above coverage may be modified to comply with local regulations or state laws. Our policy is available in all states in the U.S., except for those rides originating in New York City with a TLC (Taxi and Limousine Commission) driver. Get information about our insurance policies.

## Passenger Ratings

Drivers rate passengers after each ride, so you've always got a say. We also require passengers to provide valid credit card information for identity verification purposes.



## Frequently Asked Questions

### I already have a job, so can I just drive a few hours in my off-time?

Absolutely. You choose when you drive. Some drivers make more than $800 just driving Friday nights and weekends.

### How do I get paid?

Drivers get paid for every trip on a per minute and mile basis. Money is deposited into your account each week automatically, or you can cash out instantly with Express Pay.

### Is Lyft safe?

Our community's safety is our top priority. We run extensive background checks on drivers, provide up to $1M commercial automobile liability policy, and designed numerous safety features into our app. Passengers must provide a valid credit card and phone number for identity verification purposes. Drivers and passengers also rate each other at the end of a ride, so that we're always upholding our high community standards.

### What are Lyft's requirements?

You must be at least 21 and own an iPhone or Android phone. As part of our approval process, you'll undergo a DMV check, plus a national and county background check. This will require a Social Security number, in addition to an in-state driver's license that is at least a year old. Learn more about our background check standards on our Safety page, and our comprehensive driver requirements in the Help Center.

Your car needs to have four external door handles and at least five total seat belts. You must be a covered party on your car's in-state insurance, and have in-state license plates. We'll confirm all of this during our 19-point vehicle inspection. Cars have Lyft age requirements too, which can vary by state. See your state-specific requirements.

See more commonly asked questions

APPLY NOW



# *EXHIBIT 2*



## What is Lyft?

Lyft matches drivers with passengers who request rides through our smartphone app, and passengers pay automatically through the app.

Whether you're trying to offset costs of your car, cover this month's bills, or fund your dreams, Lyft will get you there. So, go ahead. Be your own boss.

## Why Lyft?

**Keep Your Tips**
Earn tips from your passengers and keep the whole amount — they're yours.

**Make More Money**
With increased Prime Time pricing during peak hours, you make more with Lyft.

**Best Community**
The Lyft community is full of awesome, friendly people — passengers and drivers alike.



**How Lyft Driving Works**

STEP 1
Open the app and turn on driver mode.



## Lyft Insurance Protection

Lyft provides additional insurance policies, at no cost to the driver. We worked with leading insurance carriers to provide various coverages including: commercial auto liability insurance up to $1M per occurrence, contingent comprehensive and collision insurance for drivers who carry comprehensive and collision coverage on their personal auto policy, and coverage for bodily injury caused by uninsured/underinsured motorists when you are engaged in a ride. If you already carry commercial insurance or personal coverage providing specific coverage for ridesharing, Lyft's policy will continue to be excess to your insurance coverage. Please note, the above coverage may be modified to comply with local regulations or state laws. Our policy is available in all states in the U.S., except for those rides originating in New York City with a TLC (Taxi and Limousine Commission) driver. Get information about our insurance policies.

## Passenger Ratings

Drivers rate passengers after each ride, so you've always got a say. We also require passengers to provide valid credit card information for identity verification purposes.





## Frequently Asked Questions

### I already have a job, so can I just drive a few hours in my off-time?

Absolutely. You choose when you drive. Some drivers make more than $800 just driving Friday nights and weekends.

### How do I get paid?

Drivers get paid for every trip on a per minute and mile basis. Money is deposited into your account each week automatically, or you can cash out instantly with Express Pay.

### Is Lyft safe?

Our community's safety is our top priority. We run extensive background checks on drivers, provide up to $1M commercial automobile liability policy, and designed numerous safety features into our app. Passengers must provide a valid credit card and phone number for identity verification purposes. Drivers and passengers also rate each other at the end of a ride, so that we're always upholding our high community standards.

### What are Lyft's requirements?

You must be at least 21 and own an iPhone or Android phone. As part of our approval process, you'll undergo a DMV check, plus a national and county background check. This will require a Social Security number, in addition to an in-state driver's license that is at least a year old. Learn more about our background check standards on our Safety page, and our comprehensive driver requirements in the Help Center.

Your car needs to have four external door handles and at least five total seat belts. You must be a covered party on your car's in-state insurance, and have in-state license plates. We'll confirm all of this during your 19-point vehicle inspection. Cars have Lyft age requirements too, which can vary by state. See your state-specific requirements.

See more commonly asked questions

( APPLY NOW )



**EXHIBIT 3**



## What is Lyft?

Lyft matches drivers with passengers who request rides through our smartphone app, and passengers pay automatically through the app.

Whether you're trying to offset costs of your car, cover this month's bills, or fund your dreams, Lyft will get you there. So, go ahead. Be your own boss.

## Why Lyft?

**Keep Your Tips**

Earn tips from your passengers and keep the whole amount — they're yours.

**Make More Money**

With increased Prime Time pricing during peak hours, you make more with Lyft.

**Best Community**

The Lyft community is full of awesome, friendly people — passengers and drivers alike.



## How Lyft Driving Works

**STEP 1**

Open the app and turn on driver mode.



## Lyft Insurance Protection

Lyft provides additional insurance policies, at no cost to the driver. We worked with leading insurance carriers to provide various coverages including: commercial auto liability insurance up to $1M per occurrence, contingent comprehensive and collision insurance for drivers who carry comprehensive and collision coverage on their personal auto policy, and coverage for bodily injury caused by uninsured/underinsured motorists when you are engaged in a ride. If you already carry commercial insurance or personal coverage providing specific coverage for ridesharing, Lyft's policy will continue to be excess to your insurance coverage. Please note, the above coverage may be modified to comply with local regulations or state laws. Our policy is available in all states in the U.S. except for those rides originating in New York City with a TLC (Taxi and Limousine Commission) driver. Get information about our insurance policies.

## Passenger Ratings

Drivers rate passengers after each ride, so you've always got a say. We also require passengers to provide valid credit card information for identity verification purposes.



## Frequently Asked Questions

### I already have a job, so can I just drive a few hours in my off-time?

Absolutely. You choose when you drive. Some drivers make more than $800 just driving Friday nights and weekends.

### How do I get paid?

Drivers get paid for every trip on a per minute and mile basis. Money is deposited into your account each week automatically, or you can cash out instantly with Express Pay.

### Is Lyft safe?

Our community's safety is our top priority. We run extensive background checks on drivers, provide up to $1M commercial automobile liability policy, and designed numerous safety features into our app. Passengers must provide a valid credit card and phone number for identity verification purposes. Drivers and passengers also rate each other at the end of a ride, so that we're always upholding our high community standards.

### What are Lyft's requirements?

You must be at least 21 and own an iPhone or Android phone. As part of our approval process, you'll undergo a DMV check, plus a national and county background check. This will require a Social Security number, in addition to an in-state driver's license that is at least a year old. Learn more about our background check on our _Safety page_, and our comprehensive driver requirements in the _Help Center_.

Your car needs to have four external door handles and at least five total seat belts. You must be a covered party on your car's in-state insurance, and have in-state license plates. We'll confirm all of this during your 19-point vehicle inspection. Cars have Lyft age requirements too, which can vary by state. See your _state-specific requirements_.

See more commonly asked questions

APPLY NOW

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Michael J. Jaurigue (SBN 208123), Abigail A. Zelenski (SBN 228610)
David Zelenski (SBN 231768), Ryan A. Stubbe (SBN 289074)
JAURIGUE LAW GROUP, 300 West Glenoaks Boulevard, Suite 300
Glendale, California 91202
TELEPHONE NO.: 818-630-7280   FAX NO.: 888-879-1697
ATTORNEY FOR *(Name):* Plaintiff Antonio Tecson

**FOR COURT USE ONLY**

**F I L E D**
Superior Court of California
County of San Francisco

SEP 2 6 2018

CLERK OF THE COURT
BY: _____
BOWMAN, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, California 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Antonio Tecson v. Lyft, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | CGC-18-570125 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):*  One (Violation of TCPA, 47 U.S.C. § 227)
5. This case [✓] is [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 25, 2018

David Zelenski
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

BY FAX
ONE LEGAL LLC

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

 

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

 CT Corporation

**Service of Process Transmittal**
11/01/2018
CT Log Number 534337422

TO:     Sam Gall
        Lyft, Inc.
        185 Berry St Ste 5000
        San Francisco, CA 94107

RE:     **Process Served in California**

FOR:    Lyft, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ANTONIO TECSON, ETC., PLTF. vs. LYFT, INC., ETC., DFT. |
| **DOCUMENT(S) SERVED:** | NOTICE, PROOF |
| **COURT/AGENCY:** | San Francisco County - Superior Court - San Francisco, CA<br>Case # CGC18570125 |
| **NATURE OF ACTION:** | Personal Injury - NOTICE OF SEPARATION OF ATTORNEY |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 11/01/2018 postmarked on 10/30/2018 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | MICHAEL J. JAURIGUE<br>JAURIGUE LAW GROUP<br>300 West Glenoaks Boulevard, Suite 300<br>Glendale, CA 91202<br>818-630-7280 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/01/2018, Expected Purge Date: 11/06/2018<br><br>Image SOP<br><br>Email Notification,  Lindsay Llewellyn  lllewellyn@lyft.com<br><br>Email Notification,  Sam Gall  sgall@lyft.com<br><br>Email Notification,  Anne Rupley  arupley@lyft.com<br><br>Email Notification,  Adrienne Young  adrienneyoung@lyft.com<br><br>Email Notification,  Sara Giardina  sgiardina@lyft.com<br><br>Email Notification,  John Pellegrini  jpellegrini@lyft.com<br><br>Email Notification,  Nick Clements  nclements@lyft.com<br><br>Email Notification,  Sam Gall  sgall@lyft.com |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
11/01/2018
CT Log Number 534337422

TO:    Sam Gall
       Lyft, Inc.
       185 Berry St Ste 5000
       San Francisco, CA 94107

RE:    **Process Served in California**

FOR:   Lyft, Inc.  (Domestic State: DE)

Email Notification,  Jeannie Lieu  jlieu@lyft.com

Email Notification,  Adam Jacobs  ajacobs@lyft.com

SIGNED:      C T Corporation System
ADDRESS:     818 West Seventh Street
             Los Angeles, CA 90017
TELEPHONE:   213-337-4615

DOCKET HISTORY:

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| SUMMONS, COMPLAINT, EXHIBIT(s) | By Process Server on 10/10/2018 | Sam Gall Lyft, Inc. | 534205376 |

Page 2 of  2 / AV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

JLG Lawyers
300 W. Glenoaks Blvd., Suite 300
Glendale, CA 91202

G4 913
30 OCT '18
PM 5 L



stamps
$0.47⁰
US POSTAGE
FIRST CLASS
062S0009514374
91203
S73578.194

CT Corporation System
Registered Agent for Lyft, Inc.
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

90017-347630

JAURIGUE LAW GROUP
Michael J. Jaurigue (SBN 208123)
  michael@jlglawyers.com
Ryan A. Stubbe (SBN 289074)
  ryan@jlglawyers.com
300 West Glenoaks Boulevard, Suite 300
Glendale, California 91202
Telephone: (818) 630-7280
Facsimile: (888) 879-1697

*Attorneys for Plaintiff Antonio Tecson*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ANTONIO TECSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LYFT, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CGC-18-570125<br><br>**NOTICE OF SEPARATION OF ATTORNEY** |

1    **PLEASE TAKE NOTICE** that, as of close of business on October 31, 2018, Abigail

2  Zelenski—currently listed as one of the attorneys of record for Plaintiff Antonio Tecson in the within

3  action—will no longer be employed by the Jaurigue Law Group and that she therefore should be

4  removed from the docket of this case. Although Ms. Zelenski no longer represents Plaintiff as counsel

5  of record in this action, at least one member of the Jaurigue Law Group, and at least one member of the

6  Bar of this Court, will continue to serve as counsel of record for Plaintiff.

7

8  Dated: October 30, 2018                              JAURIGUE LAW GROUP

9

10                                                        Michael J. Jaurigue
                                                          Abigail A. Zelenski
11                                                        Ryan A. Stubbe
                                                          *Attorneys for Plaintiff*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1

### *PROOF OF SERVICE*

2

I am employed in the County of Los Angeles; I am over the age of eighteen years and am not a party to
the within action; and my business address is 300 West Glenoaks Boulevard, Suite 300, Glendale,
California 91202.

3

4

On **October 30, 2018**, I served the document(s) described as **NOTICE OF SEPARATION OF
ATTORNEY** on the party(ies) in this action by delivering a true copy(ies) addressed as follows:

5

6

CT Corporation System
Registered Agent for Lyft, Inc.
818 West Seventh Street, Suite 930
Los Angeles, CA 90017

7

8

9

XXX    **BY U.S. MAIL:** I am readily familiar with the firm's practice of collection and processing
correspondence for mailing. Under that practice, an envelope(s) containing the document(s)
would be deposited with the U.S. Postal Service on that same day, with postage thereon fully
prepaid, at Glendale, California in the ordinary course of business. I am aware that, on motion of
the party served, service is presumed invalid if the postal-cancellation date or postage-meter date
is more than one day after the date of deposit for mailing.

10

11

12

☐    **BY OVERNIGHT DELIVERY OR EXPRESS MAIL:** I enclosed the document(s) in an
envelope(s) or package(s) allowed by an overnight-delivery carrier and/or by the U.S. Post
Office for express mail, and addressed to the person(s) at the address(es) above. I placed the
envelope(s) or package(s) for collection and overnight delivery or express mail at an office or a
regularly utilized drop-box of the overnight-delivery carrier, or I dropped it off at the U.S. Post
Office.

13

14

15

I declare under penalty of perjury under the laws of the State of California and the United States that the
foregoing is true and correct. Executed on **October 30, 2018**, at Glendale, California.

16

17

18

_____
Brigitte Molina

19

20

21

22

23

24

25

26

27

28

NOTICE OF SEPARATION OF ATT'Y – Case No. CGC-18-570125